Stanley V. **WALDHEIM**, Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

**COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,**

v.

Helen W. **BIENENSTOK**, Respondent.

Nos. 11897, 11898.

United States Court of Appeals
Seventh Circuit.

May 14, 1957.

Rehearing Denied in No. 11897
June 17, 1957.

**2**

Maurice Weinstein, Eric W. Passmore, Milwaukee, Wis., for Waldheim and Bienenstok.

Charles K. Rice, Asst. Atty. Gen., Grant W. Wiprud, Attorney, Tax Division, U. S. Dept. of Justice, Washington, D. C., Lee A. Jackson, Harry Baum, Attorneys, Dept. of Justice, Washington, D. C., for Commissioner of Internal Revenue.

Before LINDLEY and SWAIM, Circuit Judges, and WHAM, District Judge.

WHAM, District Judge.

The controversy herein arises out of income tax liability assessed against Stanley V. Waldheim and Helen W. Bienenstok for the years 1945 and 1946. The appeal in Case No. 11,897 is brought by the petitioner, Stanley V. Waldheim, to review a portion of the decision of the United States Tax Court rendered June 13, 1956. The issues on the appeal have been narrowed to those relating to the taxability in 1945 of the gain accruing to Stanley Waldheim during that year from a sale to him by Waldheim & Company, a corporation, of 333⅓ shares of its treasury stock for a price much below the fair market value of the stock at the time of the sale.

The petitioner, Stanley V. Waldheim, appeals from that portion of the Tax Court's decision wherein it was held that Waldheim & Company (a corporation in which the stock was closely held by members of the Waldheim family) by selling 333⅓ shares of its treasury stock to Waldheim at a price substantially below the fair market value of said stock, thereby effected the distribution of a taxable dividend to the extent that the difference between the price to Waldheim and the fair market value of the stock was covered by the 1945 earnings of the corporation not otherwise distributed.

The cross-appeal in Case No. 11,898 is brought by the Commissioner of Internal Revenue to enable a re-computation of deficiencies as to taxpayer Bienenstok if this court sustains the appeal of taxpayer Waldheim and reverses said decision of the United States Tax Court in Case No. 11,897.

The stock sale and transfer relevant to this appeal concern 333⅓ shares of Waldheim & Company stock which Jack Waldheim, a nephew of petitioner, inherited from his grandfather, Victor Waldheim. Jack Waldheim was employed by the corporation for a brief period but friction arose and he desired to sell his stock and sever all relations with the corporation. The said shares were transferred to the corporation on June 4, 1943 by Jack Waldheim for a consideration paid to him by the corporation of $7,500 and thereafter were carried on the books of the corporation as treasury stock along with certain other shares acquired by the corporation.

Differences arose among the stockholder members of the Waldheim family

which resulted in Stanley Waldheim being discharged as manager in April, 1945. Immediately thereafter he filed three lawsuits in the Circuit Court of Milwaukee County concerning the corporation and the rights of the parties as among themselves, naming as defendants in the first Waldheim & Company, Robert Bienenstok, husband of Helen Bienenstok, and Esther Waldheim; in the second Robert Bienenstok and Esther Waldheim; and in the third Helen Bienenstok.

The litigation threatened to cause serious trouble and loss in the business of the corporation and an agreed settlement became desirable. Negotiations eventually led to a settlement of all of the lawsuits and the controversies among the stockholders on November 13, 1945. In the settlement, among other things, it was agreed that Stanley Waldheim would be permitted to acquire for $7,500 to be paid by him to the corporation, the 333⅓ shares of stock which the corporation had acquired from Jack Waldheim for $7,500 in 1943. It was found as a fact by the Tax Court that this stock when transferred had a fair cash market value of $100.00 per share. This finding is supported by adequate evidence and is binding on this court. The settlement agreement contained other important provisions not pertinent to the questions presented on this appeal.

It is the contention of petitioner that in 1943 when Jack Waldheim desired to sell his 333⅓ shares of corporation stock and sever his relations with the corporation he first offered to sell the stock to petitioner for $7,500; that petitioner at that time was unable to obtain the money with which to purchase the stock and in order to prevent the stock from falling into hands outside the Waldheim family he arranged with the corporation for the corporation to purchase the stock from Jack for $7,500 and hold it for petitioner until such time as he would become able to pay the corporation $7,-500 for the stock; that his acquisition of said shares in the 1945 settlement for

$7,500 was pursuant to his 1943 agreement with the corporation and was in no sense a distribution of assets to him.

Petitioner Waldheim further contends that should it be held that the sale of the stock to him for less than its actual value effected a distribution of earnings the sale and transfer still cannot be construed to be a dividend since the corporation had no surplus but had a deficit at the beginning and at the end of the year 1945, which deficit was not the result of a cash distribution.

Petitioner Waldheim further contends that in any event there was no intention on the part of the corporation or of its officers and stockholders to distribute a dividend when he was permitted to acquire the stock for less than its value and in the absence of such intent there was no distribution of a dividend.

Counsel for the respondent contends the record does not bear out petitioner's claim that the corporation purchased the stock from Jack Waldheim in 1943 for $7,500 under an agreement with Stanley Waldheim that the stock would be held for him with a right to purchase at the price paid for it; that the transaction as finally consummated on November 13, 1945 constituted but an ordinary sale of the stock to Stanley Waldheim for $7,500 which was $25,833.33 less than the true value of the stock which was $100.00 per share. Respondent further contends that said action constituted a transfer by the corporation to Stanley Waldheim of a portion of the corporation's net worth to the extent of the difference between the aforesaid value of said stock and the said amount Stanley Waldheim paid for it; that such transfer effected a distribution of a taxable dividend to the purchaser under Section 115(a) of the 1939 Internal Revenue Code to the extent that there were current corporate earnings available for distribution as dividends; that the corporation had net earnings in 1945 of $23,-718.93, less applicable taxes of $5,160.-89, or $18,558.04; that in 1945 cash dividends were paid to the stockholders of $5,499.93 of which $1,833.30 was paid

to Stanley Waldheim; that, counting as a dividend of $25,833.33 the gain enjoyed by Stanley Waldheim on the stock transfer to him for $25,833.33 less than its value, total dividends of $31,333.26 were paid to the stockholders by the corporation during the year 1945 when there was but the sum of $18,558.04 net earnings; these dividends in the hands of the recipients became taxable to them on a *pro rata* basis to the extent of said net earnings despite the deficit shown by the corporate accounts at the end of 1945 even after crediting the earnings.

Few, if any, of the facts assumed in respondent's contentions as set forth in the preceding paragraph are in dispute. The main dispute relates to the soundness of respondent's conclusion that Stanley Waldheim's gain as aforesaid through the purchase of the Jack Waldheim treasury stock became taxable as a dividend in 1945 as set forth in the preceding paragraph.

The findings of the Tax Court were, in substance, that on June 4, 1943 the corporation purchased the 333⅓ shares of its stock from Jack Waldheim for $7,500 and it became treasury stock; that in the settlement of the lawsuits brought against the corporation and others mentioned earlier in this opinion Stanley Waldheim "was also permitted to acquire for $7,500 the 333⅓ shares which the company had acquired from Jack Waldheim for that amount"; that the fair cash market value of the stock so acquired was at least $100.00 per share; that at December 31, 1944 the corporation had a deficit of $21,577.26, its net earnings for the calendar year 1945 were $23,718.93, and the taxes applicable thereto were $5,160.89, leaving net earnings of $18,558.04; and that

during 1945 the corporation distributed to its stockholders *pro rata* $5,499.93 in cash of which Stanley Waldheim received $1,833.30.

In its opinion the Tax Court said, "That Stanley was enriched substantially by the settlement is not on the facts an open question. * * * the facts still show that in being permitted to purchase the shares formerly owned by Jack Waldheim for $7,500 he (Stanley Waldheim) was enriched by at least $25,833.33, the net effect of which was a distribution to him in that amount by Waldheim & Company." The Tax Court further said, "Elizabeth Susan Strake Trust, 1 T.C. 1131, is directly in point and we accordingly conclude and hold that to the extent of the 1945 earnings of the company not otherwise distributed the said distribution was a dividend within the meaning of Section 115(a) (2) and taxable to Stanley as such." Section 115(a), Internal Revenue Code, 1939, is set out in the margin.[1]

Petitioner attempts to distinguish the Strake case from the case here on the ground that the corporation in that case had a large surplus whereas Waldheim & Company had a deficit in 1945. The distinction is factually true but under the provisions of Section 115(a) (2) the distinction is without effect to the extent of the corporate net earnings during the year 1945. So held the Tax Court and we are in agreement with that conclusion. It was on this basis that income taxes were assessed against petitioner in 1945.

Petitioner's contention that the purchase in 1943 of the Jack Waldheim stock was pursuant to an agreement between petitioner and the corporation that the stock would be held for

1. Section 115(a), Internal Revenue Code, 1939, 26 U.S.C.A. § 115(a).

"(a) Distribution by corporations. The term 'dividend' when used in this chapter (except in section 201(c) (5), section 204 (c) (11) and section 207(a) (2) and (b) (3) (where the reference is to dividends of insurance companies paid to policy holders)) means any distribution made by a corporation to its shareholders, wheth-

er in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *"

him by the corporation at the price paid for it seems from the record to be wholly unsupported by evidence. The burden was on petitioner to support this claim by evidence before the Tax Court could give weight to it. In absence of such evidence the Tax Court was compelled to ignore the contention and this it quite properly did. Pacific Southwest Realty Co. v. Commissioner of Internal Revenue, 9 Cir., 128 F.2d 815, certiorari denied 317 U.S. 663, 63 S.Ct. 64, 87 L. Ed. 533; Boudreau v. Commissioner of Internal Revenue, 5 Cir., 134 F.2d 360; De Nobili Cigar Co. v. Commissioner of Internal Revenue, 2 Cir., 143 F.2d 436.

Petitioner's contention that because there was a deficit on the books of Waldheim & Company throughout the year 1945 a distribution to the stockholders during that year cannot be construed as a dividend fails to give proper regard to the provisions of the applicable statute set forth above in the margin hereof. As will be noted, Section 115(a) (2) of the Revenue Code of 1939 provides that a dividend means any distribution "out of the earnings or profits of the taxable year * * * without regard to the amount of the earnings and profits at the time the distribution was made." Under these provisions it becomes plain that the mere fact that the corporation may have a deficit does not prevent a distribution of assets or net worth from being construed as a dividend to the extent that there may be available profits and earnings during the year in which the distribution occurs.

The contention that in absence of an intent to distribute a dividend on the part of the corporation, its officers and board, a distribution of corporate assets is not a dividend may or may not be true according to the circumstances of the transaction. Palmer v. Commissioner of Internal Revenue, 302 U.S. 63, 58 S.Ct. 67, 82 L.Ed. 50; Hirsch v. Commissioner of Internal Revenue, 9 Cir., 124 F.2d 24. The conclusion is

inescapable that by the sale by the corporation of its treasury stock to Stanley Waldheim at a bargain price in this case in effect transferred to him a portion of the corporation's net worth and effected a distribution of corporate earnings to him. Under such circumstances the purpose or intent of the parties is not controlling or in absence of proof to the contrary may be assumed or found to be in accord with the actual effect of the transaction. Under the evidence in the record the Tax Court was justified by the plain effect of the transaction in assuming or finding that the corporate officers intended to and did distribute a dividend to Stanley Waldheim by selling treasury stock to him at a bargain price.

Petitioner also insists that his gain from the purchase of the 333⅓ shares of said treasury stock, if it might be called a gain, did not become taxable in 1945 and will not become taxable until the stock is sold and the profit, if any, actually determined by such sale. Whether this be true depends upon the effect of the transaction within the meaning of applicable tax laws. If it was, in effect, a distribution of a dividend within the meaning of the law, then it was income in 1945. The Tax Court held that it was a distribution of a dividend subject to immediate taxation under Section 115 (a) (2) of the Revenue Code and the language of the statute supports the holding of the court, inasmuch as it says the term "dividend" "means any distribution made by a corporation to its shareholders, whether in money or other property, * * * (2) out of the earnings or profits of the taxable year", etc. The distribution here was made in 1945 when there were earnings and profits, though limited in amount, out of which the distribution was made to the extent earnings were available. See also Treasury Regulations 111, Section 29.115–1 and Section 29.115–2.

It appearing that none of petitioner's objections can be sustained the decision of the Tax Court is affirmed in Case No. 11,897.

As Case No. 11,898 was brought as a cross-appeal for the purpose of re-computing taxes only if this court reversed the Tax Court in Case No. 11,-897, no question is now before the court in Case No. 11,898 and it will be and is dismissed.